UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WESLEY SCOTT MITCHELL,

          Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

          Defendant.

Case No. C17-5320 RBL

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION AND REMANDING FOR FURTHER PROCEEDINGS**

Wesley Scott Mitchell appeals the ALJ's decision finding him not disabled. He contends the ALJ erroneously (1) found at step-five he can perform jobs in the national economy; (2) failed to account for all limitations assessed by Robert Hoskins, M.D., Michael Brown, Ph.D., Patricia Kraft, Ph.D., Han Johnson, Ph.D., Charles Quinci, Ph.D., Peter Weiss, Ph.D., and Alysa Ruddell, Ph.D.; (3) ignored vocational specialist Kathy O'Neal's opinions; and (4) rejected his testimony about the severity of his limitations. Dkt. 10 at 1-2. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Mr. Mitchell applied for benefits in 2010. After conducting a hearing in January 2013, the ALJ issued a decision finding him not disabled. Tr. 27-49. Mr. Mitchell sought review of this

decision in the United States District Court. The Court reversed the ALJ's decision and remanded the matter for further administrative proceedings. Tr. 589-602. Following remand, the ALJ conducted a hearing and issued a decision on October 21, 2015, finding Mr. Mitchell not disabled. Tr. 511-554. Mr. Mitchell seeks review of this decision, which is the final decision of the Commissioner.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Mitchell has not engaged in substantial gainful activity since November 22, 2010.

**Step two:** Degenerative joint disease of the right knee, tendinosis of the supraspinatus tendon and osteoarthritic change in glenohumeral articulation and acromioclavicular (AC) joint without significant impingement of the tendon, polysubstance abuse in reported remission, psychosis NOS and mood disorder NOS are severe impairments.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Mitchell can perform light work except he can occasionally climb, stoop, kneel, bend, crouch, and crawl; he should avoid extreme cold and vibration; he is limited to performing simple, repetitive tasks that involve no more than incidental public contact; he is limited to no more than occasional overhead reaching with the left upper extremity; he is limited to work environments with noise level three or below; and in an eight hour day he can stand and walk no more than two hours.

**Step four:** Mr. Mitchell has no past relevant work.

**Step five:** There are jobs that exist in significant numbers in the national economy that Mr. Mitchell can perform and he is thus not disabled.

TR. 516-31.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. PTr.t 404, SubpTr.t P. Appendix 1.

evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation.

**A.     The ALJ's Step-Five Determination**

At step-five, the ALJ found the vocational expert (VE) testified a person with Mr. Mitchell's RFC "would be able to perform the requirements of representative occupations such as routing clerk (D.O.T. 22.687-022) . . . and laundry folder (D.O.T. 369.687-018). Tr. 530. Mr. Mitchell contends the ALJ harmfully erred in two respects. First he correctly argues the VE testified a person limited to standing and walking no more than two hours in an eight hour day, such as Mr. Mitchell "wouldn't be able to do the routing clerk." Tr. 554. The ALJ accordingly erred in finding Mr. Mitchell could perform the routing clerk job.

Second he contends the laundry folder job "requires more than 'simple repetitive tasks' as in the RFC finding." Dkt. 10 at 4-5. He argues the laundry folder job, which requires DOT reasoning level 2 demands more than a person who is limited to jobs involving simple repetitive tasks. *Id.* The argument fails. There is no conflict between an RFC limited to simple repetitive tasks and the DOT level 2 reasoning requirements of laundry folder. *See Hernandez v. Berryhill,* 707 Fed. Appx. 456, 458 (9th Cir. 2017) ("There was no apparent conflict between the ALJ's residual functional capacity ("RFC") determination that Hernandez was "limited to simple, repetitive tasks" and the vocational expert's testimony that she could work as an envelope addresser, a job which the U.S. Department of Labor's Dictionary of Occupational Titles describes as requiring 'Level 2' reasoning.").

In sum, the Court rejects Mr. Mitchell's contention the ALJ identified jobs he cannot

perform. While Mr. Mitchell cannot perform work as a routing clerk, there is no conflict between the ability to perform simple repetitive work and the towel folder jobs which requires level 2 reasoning. Accordingly the Court rejects Mr. Mitchell's argument that the ALJ harmfully erred.

**B.      Evaluation of the Medical Evidence and Other Source Evidence**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

Mr. Mitchell argues the ALJ failed to account for all limitations assessed by Robert Hoskins, M.D., Michael Brown, Ph.D., Patricia Kraft, Ph.D., Han Johnson, Ph.D., Charles Quinci, Ph.D., Peter Weiss, Ph.D., and Alysa Ruddell, Ph.D.

*1.      Dr. Hoskins*

The ALJ gave significant weight to Dr. Hoskins' opinions, Tr. 528, but failed to mention or discuss the doctor's opinion that Mr. Mitchell had limited near and far visual acuity, limited depth perception and accommodation, and limited color vision and field of vision in his left eye. *See* Tr. 113. The Commissioner concedes the ALJ did not discuss these limitations but contends the error is harmless. The Commissioner first argues that while the laundry folder job requires "near acuity, occasional accommodation, and occasional color vision . . . none of these abilities require the use of both eyes. Dkt. 11 at 12. This is merely an argument. It is neither a finding the ALJ made, nor facts supported by the VE's testimony about the job's demands. Hence, in order to accept the argument, the Court would have to play the role of the ALJ, and make a factual determination that Mr. Mitchell can perform work as a laundry folder despite his visual impairments. The Court cannot do this. It is the ALJ's prerogative to make factual findings. The

Court may only judge the ALJ's decision based upon the grounds upon which the record discloses that its action was based. *See e.g Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090 1102 (9th Cir. 2014). The Court "reviews only the reasons provided by the ALJ in the disability decision and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Additionally, the Court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir.2006). But this is what the Commissioner asks in arguing the Court find, in the first instance, Mr. Mitchell's visual impairments do not preclude work as a laundry folder.

Additionally, whether Mr. Mitchell's visual impairments do, or do not preclude work as a laundry folder is exactly what a VE is for. This is after all a case in which the ALJ found he could not rely upon the Medical-Vocational Guidelines (Grids) in making a step-five determination, Tr. 530, and that vocational expert testimony was thus required. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The hypothetical questions the ALJ asked the VE to determine what work Mr. Mitchell can perform "must include 'all of his functional limitations. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)). This did not occur as the question posed to the VE omitted Mr. Mitchell's visual limitations in the hypothetical questions.

The Commissioner also argues the first time the Court reversed the ALJ, the Court acknowledged "abilities such as accommodation and color vision were not necessarily inconsistent with the loss of vision in one eye." Dkt. 11 at 3. The Commissioner's suggestion that the Court previously found Mr. Mitchell could perform work as a laundry folder is misplaced. In the earlier decision, the ALJ's RFC determination indicated Mr. Mitchell had

essentially lost most of his vision in his left eye. Tr. 35. Furthermore the VE in that case did not identify laundry sorter as a job that Mr. Mitchell could perform. Hence the Court's earlier decision is not determinative as to whether Mr. Mitchell can perform work as a laundry folder despite being blind in one eye.

The Court accordingly concludes the ALJ harmfully erred in failing to discuss Mr. Mitchell's visual limitations and including the limitation in the questions posed to the VE. Because the hypothetical questions failed to "set out all of the claimant's impairments," the VE's answers to the question cannot constitute substantial evidence to support the ALJ's decision. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

### *2.     Drs. Brown and Kraft*

The ALJ gave significant weight to Drs. Brown's and Kraft's opinions, Tr. 528, but failed to mention or discuss the doctor's opinions that Mr. Mitchell "may need additional time to learn new tasks," cannot remember detailed instructions on a regular basis without having to write them down and consistently consult written instructions." *Id.* The ALJ also failed to discuss the doctors' opinions that his psychiatric symptoms would episodically slow work pace but he can still be productive. Dkt. 10 at 6-7. The Commissioner contends the ALJ's failure to discuss these opinions is harmless because the doctor only speculated Mr. Mitchell "may" need more time to learn new tasks, not that the need for more time was required. The Commissioner also contends the job the ALJ found Mr. Mitchell could perform involves simple tasks and would thus account for Mr. Mitchell's need for additional time and instruction to adapt to changes and to learn new tasks. Dkt. 11 at 5. The Commissioner also argues since Mr. Mitchell can still be productive despite slow work pace due to mental problems, the ALJ did not commit harmful error.

The ALJ did not discuss any of the limitations above. The Commissioner's argument is

therefore an improper post-hoc rationalization that this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995). Moreover, the doctors' opinions are not as easy to apply as the Commissioner suggests. They require considerable assessment and weighing, i.e., how slow would Mr. Mitchell's pace be; would that slow pace preclude employment, or not; does Mr. Mitchell need more time to learn or not; and what RFC would Mr. Mitchell have following an assessment of these limitations? As discussed above, this Court is not in a position to make factual determinations in the first instance on appeal. The Court accordingly concludes the ALJ erred in failing to discuss the mental limitations above and that the error was harmful.

### *3.    Dr. Johnson*

The ALJ gave Dr. Johnson's opinions "some weight" and indicated the doctor's opinions about Mr. Mitchell's limitations are "accommodated in the above residual functional capacity." Tr. 525. Mr. Mitchell argues the ALJ erred by failing to mention or account for Dr. Johnson's opinions that he is moderately limited in his ability to perform routine tasks without undue supervision, Tr. 368, and moderately limited in his ability to maintain appropriate behavior in a work setting. Tr. 369. The Commissioner does not dispute the ALJ failed to mention these limitations. Rather, the Commissioner contends the ALJ's RFC accounts for Dr. Johnson's opinions; the opinions do not set forth limitations and thus need be included in the RFC; and that Mr. Mitchell can perform work as a laundry folder with these limitations. Dkt. 11 at 6-7.

These are post-hoc arguments which as noted above the Court cannot rely upon. Further, Mr. Mitchell's need for supervision and limitations in maintaining appropriate behavior in the

work place need further assessment and must be accounted for in determining Mr. Mitchell's RFC. The ALJ's finding Mr. Mitchell can perform simple repetitive work does not resolve whether supervision is needed or not. It also does not answer whether Mr. Mitchell can maintain appropriate behavior in the workplace. The Court accordingly concludes the ALJ erred in failing to discuss the mental limitations above and that the error was harmful.

### *4.    Dr. Quinci*

Dr. Quinci examined Mr. Mitchell and opined he was moderately limited in his ability to 1) "perform activities within a specified schedule, maintain regular attendance and be punctual within customary tolerances without special supervision"; 2) "communicate and perform effectively in a work setting"; 3) "complete a normal work day and work week without interruptions from psychological symptoms"; and 4) "maintain appropriate behavior in a work setting." Tr. 464.

The ALJ gave "some weight" to Dr. Quinci's opinions and found the RFC determination limiting Mr. Mitchell to simple repetitive work was consistent with the doctor's opinions, and further limitations were unwarranted because Mr. Mitchell's intelligence tests underrepresent his abilities and his volunteer work "contravenes any suggestion of debilitating social interactivity skills." Tr. 525. These are neither clear and convincing nor specific and legitimate reasons to reject many of Dr. Quinci's opinions. That Mr. Mitchell might have a higher I.Q. thantesting shows might mean he can perform more than simple and repetitive work. Similarly, that Mr. Mitchell's volunteer work suggests he has some social interactivity skills, might mean he could work around others. But a higher I.Q. or ability to work around others have no correlation with whether Mr. Mitchell can work within a specified schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, complete a normal work day

and work week without interruptions from psychological symptoms, or maintain appropriate behavior in a work. The ALJ accordingly erred as a matter of law. *See* 20 C.F.R. § 416.945(a) (In determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work.). The errors are harmful because the ALJ's RFC determination does not account for all of the limitations assessed by Dr. Quinci.

### 5. *Dr. Weiss*

Dr. Weiss performed a "psychological/psychiatric evaluation on Mr. Mitchell and also reviewed Dr. Johnson's evaluation. Tr. 987. Dr. Weiss opined Mr. Mitchell was moderately impaired in his ability to persist and learn new tasks, adapt to changes in a routine work setting, maintain appropriate behavior is a work setting. Tr. 989. The doctor also opined he was markedly limited in his ability to communicate and perform in the work setting and set realistic goals and plan independently. Finally the doctor found Mr. Mitchell was severely limited in his ability to perform activities within a specified schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, and complete a normal work day and work week without interruptions from psychological symptoms. *Id.*

The ALJ gave "limited weight" to Dr. Weiss' opinion on the grounds they were based upon the "claimant's unsubstantiated subjective allegations," "the record does not support" the doctor's opinions, and the doctor's report does not objectively set forth limitations that are not accounted for in the RFC determination. Tr. 526.

As to the ALJ's first reason, if a medical source's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue*, 533 F.3d

1035, 1041 (9th Cir. 2008). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ryan v. Commissn'r of Soc. Sec.,* 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Additionally, an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001). Here, Dr. Weiss did not question Mr. Mitchell's credibility. Additionally, Dr. Weiss did not merely rely upon Mr. Mitchell's statements in arriving at his conclusion. As the doctor noted, he reviewed Dr. Johnson's earlier evaluation which contained information gained from a mental status examination, and test results from a standardized MMPI-2RF Report as part of his evaluation. Substantial evidence thus does not support the conclusion that Dr. Weiss' opinion were based upon Mr. Mitchell's statements.

The ALJ's second and third reasons are also invalid. As the Court in *Embrey v. Bowen*, 849 F.2d 418 (9th Cir.1988), explained "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." But this is what the ALJ erroneously did in finding "the record does not support" the doctor's opinions, and the doctor's report does not objectively set forth limitations that are not accounted for in the RFC determination. The Court accordingly concludes the ALJ erred in rejecting Dr. Weiss' opinions.

### *6.     Dr. Ruddell*

Dr. Ruddell performed a psychological examination and reviewed Dr. Weiss' report and evaluation. She opined Mr. Mitchell had similar limitations as found by many of the medical

ORDER REVERSING THE COMMISSIONER'S FINAL
DECISION AND REMANDING FOR FURTHER
PROCEEDINGS - 10

sources above. The ALJ rejected her opinions on the grounds they "are not fully supported by the record discussed above, because the non-medical evidence shows he is more functional than she opines him to be." Tr. 527. This is a conclusory statement and "conclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir.1999). As noted above the ALJ errs by merely stating a medical opinion is not supported by sufficient objective findings or is contrary to the preponderant conclusions mandated by the objective findings. This does not achieve the level of specificity that is required, even when the ALJ lists seriatim the objective factors. Here, the ALJ did nothing more than reject the doctor's opinions as inconsistent with other evidence. The ALJ accordingly erred.

**C.      Lay Testimony – Kathy O'Neal**

Ms. O'Neal prepared an assessment to identify Mr. Mitchell's vocational preferences, and evaluate his strengths and barriers for competitive employment. Tr. 260. Mr. Mitchell contends the ALJ erred in failing to mention or discuss the assessment. In specific he notes Ms. O'Neal indicated Mr. Mitchell would need help with training, including repetitive hands on training, job coaching on job expectations and personal and communication skills. Dkt. 10 at 16. He also notes Mr. O'Neal indicated Mr. Mitchell had a "tough time interacting with people and would need intensive coaching when entering the work force." *Id.*

The ALJ failed to mention Ms. O'Neal's report. The Commissioner, however, correctly contends the failure is harmless. Ms. O'Neal's report focuses on preparing Mr. Mitchell for retail work, i.e., what he needs to do this type of work. But, this is work Mr. Mitchell did not want to do and which is incompatible with the ALJ's RFC determination limiting Mr. Mitchell to simple repetitive tasks, low noise levels, limited climbing, kneeling, stooping, and overhead reaching

and standing or walking no more than two hours in a day. In other words, the report sets forth potential limits and barriers for work that the ALJ's RFC determination excludes. Hence, the ALJ's failure to mention the report is harmless as it does not result in the failure to account for limitations attached to the more limited level of work the ALJ considered in Mr. Mitchell's case.

**D.     Mr. Mitchell's Testimony**

Mr. Mitchell argues the ALJ improperly discounted his symptom testimony. Newly revised Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *13, provides guidance on how adjudicators should evaluate the consistency of a claimant's statements. SSR 16-3p eliminates the use of the term "credibility" and instead focuses on an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work. The SSR also indicates that "in evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single conclusory statement that "the individual's statements about his or her symptoms have been considered," or that "the statement about the individual's symptoms are (or are not) supported or consistent" Further "the determination must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated."

SSR 16-3p does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony. To reject subjective complaints, an ALJ must provide "specific, cogent reasons" and, absent affirmative evidence of malingering, must reject a claimant's testimony for "clear and convincing" reasons. *Morgan v. Commissioner of SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *see Carmickle v. Commissioner, SSA*, 533 F.3d 1155, 1160 (9th

Cir. 2008).[3]

Here the ALJ rejected Mr. Mitchell's testimony as unsupported by the medical evidence. Tr. 519. In specific, the ALJ detailed that the imaging reports were inconsistent with Mr. Mitchell's complaints regarding joint disease. *Id.* The ALJ also detailed how Mr. Mitchell's physical examinations showed good range of movement, stable knee ligaments, no joint effusion or tenderness. *Id.* Mr. Mitchell's orthopedic consultation recommended conservative therapy including NASAIDs and home exercise. *Id.* The ALJ also noted other findings in the medical record that the ALJ concluded did not square with Mr. Mitchell's testimony about his physical limitations.

Mr. Mitchell disagrees with the ALJ's interpretation of the medical record. The argument fails. Mr. Mitchell relies heavily on the opinions of the examining doctors above to support his claim. But those exams relate to Mr. Mitchell's mental problems. Reliance on them sidesteps how the ALJ noted Mr. Mitchell's treatment records for his physical problems did not square with his testimony. Mr. Mitchell thus presents nothing showing the ALJ's assessment of the medical record is inaccurate or unreasonable. Mr. Mitchell has consequently failed to meet his burden of showing the ALJ harmfully erred. *Molina v. Astrue*, 674 F.3d at 1111.

The ALJ also rejected Mr. Mitchell's testimony regarding his mental problems because he was in a relationship, spent his days with a girlfriend and two year old son watching T.V., doing household chores such as cooking and cleaning. The ALJ further noted Mr. Mitchell did volunteer work on the weekends and worked on old cars as a hobby. An ALJ may consider a claimant's daily activities in assessing his or her testimony. But daily activities that do not

---

[3] In *Carmickle*, the Ninth Circuit rejected the proposition that there had to be a specific *finding* of malingering; rather, it was sufficient that there be *affirmative evidence* suggesting malingering. *See Carmickle*, 533 F.3d at 1160 n.1.

contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here the ALJ did not find Mr. Mitchell made statements that were inconsistent with the activities above, or that the activities are transferrable work skills. Mr. Mitchell for instance testified he volunteered on weekends. Tr. 789. Rather the ALJ appears to have rejected Mr. Mitchell's testimony because he watches T.V. does chores and volunteers. The ALJ erred. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from h[is] credibility as to h[is] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). But this is what the ALJ erroneously did.

In sum, under SSR 16-3p the ALJ must provide specific and valid reasons to discount a claimant's testimony about his or her physical or mental impairments. The ALJ provided a valid reason supported by substantial evidence to discount Mr. Mitchell's testimony about his physical limitations. The Court affirms that determination. However, the ALJ failed to provide a valid reason supported by substantial evidence to reject Mr. Mitchell's testimony about his mental limitations. The ALJ accordingly erred.

**CONCLUSION**

For the foregoing reasons, the Court concludes the ALJ harmfully erred in failing to account for limitations assessed by Robert Hoskins, M.D., Michael Brown, Ph.D., Patricia Kraft, Ph.D., Han Johnson, Ph.D., Charles Quinci, Ph.D., Peter Weiss, Ph.D., and Alysa Ruddell, Ph.D. The ALJ also erred in rejecting Mr. Mitchell's testimony about the severity of his limitations. However, as discussed above, the ALJ did not harmfully err by failing to address vocational

specialist Kathy O'Neal's opinions.

Mr. Mitchell argues the Court should remand the matter for an award of benefits. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id*. at 1076-77.

Here the ALJ must reweigh a number of medical opinions and Mr. Mitchell' testimony about the severity of his mental limitations. As these outstanding matters must still be resolved before a disability determination can be made, the Court concludes it is appropriate to remand the matter for further administrative proceedings. The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Dr. Wingates' opinions and plaintiff's testimony about his mental limitations; develop the record and reassess plaintiff's RFC as needed, and proceed to steps four and five as appropriate.

DATED this 20th day of February, 2018.

Ronald B. Leighton
United States District Judge